UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TERRI COBB,

        Plaintiff,

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

Civil Action No. 09-00734 (BAH)

**MEMORANDUM OPINION**

Terri Cobb, the plaintiff in this action, seeks a judgment reversing the denial of her claim for Social Security Disability Insurance benefits by the Social Security Administration (the "Administration"). Complaint ¶ 4. The plaintiff's motion for a judgment of reversal and the defendant's motion for a judgment of affirmance are before the Court. After carefully considering the plaintiff's complaint, the administrative record, the parties' motions, and all memoranda of law and exhibits relating to those motions, the Court grants the plaintiff's motion, denies the defendant's motion, and remands this case to the Administration for the reasons explained below.

    **I.**    **Factual and Procedural Background**

The plaintiff is a 45-year-old woman with a high school education and additional training as an electrician. Administrative Record ("A.R.") at 58, 343. She previously worked as an electrician. *Id.* at 343. According to the plaintiff, on June 10, 2003, she was injured in a work-related accident when she fell from a ladder. *Id.*; Mem. in Supp. of Pl.'s Mot. for J. of Reversal ("Pl.'s Mem.") at 2.

On June 6, 2005, the plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act.[1] A.R. at 78. She alleged disability commencing August 9, 2004 based on arthritis, back and neck pain, and depression. *Id.* at 19, 58-60, 122-23.

The plaintiff's claim for disability was denied initially and denied again upon reconsideration. *Id.* at 44-47, 50-53. Thereafter, she requested a hearing before an Administrative Law Judge (the "ALJ"), which was held on April 2, 2008. *Id.* at 19. The plaintiff, represented by counsel, and a vocational expert testified at the hearing. *Id.* at 16-26. The ALJ denied the plaintiff's request for benefits by decision dated July 14, 2008. *Id.*

The plaintiff requested that the Appeals Council review the decision of the ALJ, but, on February 20, 2009, the Appeals Council determined that there was no basis for granting the request for review, rendering the ALJ's decision the final decision of the Commissioner of Social Security. *Id.* at 5-8.

On April 21, 2009, the plaintiff filed this action seeking reversal or remand of the Administration's final decision denying her benefits. Her motion for judgment of reversal or remand was filed on January 9, 2010. The plaintiff argues that the final decision of the Administration "fails to be supported by substantial evidence, and is erroneous as a matter of law." Pl.'s Mem. at 1. Specifically, she contends the ALJ erroneously evaluated her residual functional capacity, which is a mandatory assessment of the plaintiff's capacity for work despite any impairment she may have. *See id.* at 3-13.

---

[1] The complaint alleges that the plaintiff filed applications for "Social Security Disability Insurance benefits and/or Supplemental Security Income benefits." Complaint ¶ 4. Supplemental Security Income ("SSI") benefits are authorized under Title XVI of the Social Security Act and are distinct from, although similar to, disability insurance benefits under Title II. The plaintiff's motion for judgment of reversal refers only to claims for benefits under Title II, *see* Pl.'s Mem. at 1, and the plaintiff apparently did not pursue SSI claims with the Administration. *See, e.g.*, A.R. at 15, 58, 342. Accordingly, the Court will disregard the references to SSI in the complaint.

In response to the plaintiff's motion, the defendant moved for judgment of affirmance, arguing that the ALJ's final decision is supported by substantial evidence and is in accordance with applicable law. *See generally* Def.'s Mem. for J. of Affirmance and Def.'s Opp'n to Pl.'s Mot. for J. of Reversal ("Def.'s Mem.").

Both parties' motions are now before the Court.

## II. Standard of Review

The Social Security Act gives federal district courts jurisdiction over civil cases that challenge a final decision of the Commissioner of Social Security. 42 U.S.C. § 405(g). The reviewing court must uphold the decision of the Commissioner if it is based on substantial evidence in the record and the correct application of the relevant legal standards. *Id.*; *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004). Substantial evidence "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Butler*, 353 F.3d at 999 (quoting *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365-66 (D.C. Cir. 2003)). The Court does not review the decision *de novo*. *Davis v. Heckler*, 566 F. Supp. 1193, 1195 (D.D.C. 1983). Although the reviewing court "must carefully scrutinize the entire record," its role is "not to determine . . . whether [the plaintiff] is disabled," but only to assess "whether the ALJ's finding that she is not is based on substantial evidence and a correct application of the law." *Butler*, 353 F.3d at 999.

## III. Statutory and Regulatory Framework

To qualify for disability insurance benefits under Title II of the Social Security Act, the plaintiff must establish that she is "disabled." 42 U.S.C. § 423. "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." *Id*. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id*. § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for assessing a claimant's alleged disability. *See* 20 C.F.R. § 404.1520. The claimant carries the burden of proof on the first four steps. *Butler*, 353 F.3d. at 997. First, the claimant must demonstrate that she is not presently engaged in "substantial gainful" work. 20 C.F.R. § 404.1520(b). Second, a claimant must show that she has a "severe impairment" that "significantly limits [her] physical or mental ability to do basic work activities." *Id*. § 404.1520(c). Third, if the claimant suffers from an impairment that meets or equals an impairment listed in Appendix 1 to the Commissioner's regulations, she will be deemed disabled. *Id*. § 404.1520(d). If the claimant does not satisfy step three, the inquiry will proceed to the fourth step, but the Commissioner must first assess the claimant's residual functional capacity ("RFC"). *Id*. § 404.1520(e). This capacity reflects "what an individual can still do despite his or her limitations." *Ross v. Astrue*, 636 F. Supp. 2d 127, 132-33 (D.D.C. 2009). After the claimant's RFC has been assessed, the fourth step requires the claimant to show that she has an impairment that prevents her from performing her "past relevant work." *Id*. §§ 404.1520(e)-(f). If the claimant has carried the burden on the first four steps, the burden shifts to the Commissioner on step five to demonstrate that the claimant is able to perform "other work" based on a consideration of her RFC, age, education and work experience. *Id*. § 404.1520(g); *Butler*, 353 F.3d. at 997. If the claimant cannot perform other work, she is deemed disabled.

## IV. Discussion

The instant appeal primarily challenges the way in which the ALJ performed the residual functional capacity assessment that is required prior to steps four and five of the five-step inquiry. *See* Pl.'s Mem. at 3-14. The plaintiff argues that the ALJ failed to perform a proper RFC assessment in several respects. First, she claims that the ALJ's RFC assessment is a "naked conclusion, devoid of analysis," and that the ALJ "failed to perform a function-by-function assessment of the Plaintiff's abilities to perform work-related activities, and failed to set forth a narrative discussion describing how the evidence supported each conclusion." Pl.'s Mem. at 5-6. Second, she contends the ALJ's assessment is "contradictory on its face" in that it does not address the plaintiff's depression, which the ALJ had determined to be a "severe impairment." *Id.* at 6-7. Third, the plaintiff contends the ALJ's assessment erroneously failed to address the plaintiff's deficiencies in "concentration, persistence or pace," which the ALJ had determined to be "moderate." *Id.* at 7. Relatedly, the plaintiff asserts that the ALJ failed to conduct a sufficiently detailed mental RFC assessment in general. *Id.* at 10-13. Fourth, the plaintiff objects that the ALJ failed to evaluate pertinent evidence of plaintiff's limitations, including (1) an evaluation indicating the plaintiff had borderline intellectual functioning, (2) an evaluation indicating the plaintiff needed to avoid exposure to "extreme cold, humidity and vibration," as well as "fumes, odors, dusts, gases, [and] poor ventilation," and (3) an evaluation indicating that the plaintiff had moderate restrictions in the ability to stand, walk, and lift, carry, and handle objects. *Id.* at 9-10, 13-14. Finally, the plaintiff contends that the RFC assessment's conclusion that the plaintiff had "limited" dominant hand usage was overly vague because it did not specify the limitations. *Id.* at 13.

In addition to her arguments based on the RFC assessment, the plaintiff also asserts that the hypothetical questions the ALJ posed to the vocational expert at the hearing were flawed because they did not include any reference to the plaintiff's mental limitations. *Id.* at 7-8.

The Court agrees that the ALJ did not properly assess the plaintiff's RFC. Accordingly, the ALJ's decision must be reversed and remanded to the Administration for further proceedings consistent with this Memorandum Opinion.

### A. The ALJ's Five-Step Analysis

In this case, the ALJ began the five-step disability inquiry correctly by considering whether the plaintiff was presently engaged in "substantial gainful activity." The ALJ concluded that she had not engaged in such activity since August 9, 2004. A.R. at 21. Thus, the plaintiff satisfied the first step of the inquiry.

At the second step, the ALJ determined that the plaintiff "has the following severe impairments: arthritis, back and neck pain, and depression." *Id.* Apparently in support of this finding, although without much explanation, the ALJ set forth an eight-paragraph factual summary of the plaintiff's medical history. *Id.* at 21-22. The medical evaluations summarized in this section of the decision reflected reports from six different doctors and related both to physical and mental conditions, including arthritis, back and neck conditions, and depression, as well as other medical conditions. *Id.* Since the ALJ determined that the plaintiff had severe physical and mental impairments, the second step of the inquiry was satisfied.

The third step requires the ALJ to decide whether the claimant has an impairment that "meets or equals" the criteria for an impairment listed as disabling in Appendix 1 to the Commissioner's regulations. 20 C.F.R. § 404.1520(d). Despite having just concluded that the plaintiff's "severe impairments," included "arthritis, back and neck pain, and depression," the

ALJ's decision only analyzed whether the plaintiff's mental impairment – i.e., depression – met the criteria for a listed impairment. A.R. at 23. The ALJ concluded that the claimant "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." *Id*.

This conclusion does not appear to reflect a proper application of the third step of the inquiry, which requires the ALJ to perform a listing comparison for the relevant severe impairments. The ALJ had concluded that the plaintiff's severe impairments included not just depression, but also arthritis and back and neck pain. *Id*. at 21. Arthritis, for example, may satisfy the disability listing criteria under Listing 1.00, Musculoskeletal System, depending on the evidence. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Thus, the ALJ should have assessed whether that impairment satisfied a listing. *See Wells v. Astrue*, No. 02-1357, 2009 WL 2338047, at *7 n.5 (D.D.C. Jul. 30, 2009) ("When the evidence in the administrative record clearly generates an issue as to a particular listing and the ALJ fails to properly identify the [l]isting considered and to explain clearly the medical evidence of record supporting the conclusion reached[,] a remand can be expected to result.") (quoting *Conway ex rel. Tolen v. Astrue*, 554 F. Supp. 2d 26, 35 (D.D.C. 2008)). The failure to conduct a listing comparison may be either harmless or reversible error, depending on the circumstances, but the Court does not need to decide that issue here because the Court must remand this case on other grounds, as discussed below.[2] *See id.*

Since the ALJ concluded that the plaintiff's impairments did not meet the criteria of any listed impairment, he continued with the inquiry by determining the plaintiff's residual functional capacity. The ALJ concluded the plaintiff had "the residual functional capacity to perform light unskilled work as defined in 20 C.F.R. § 404.1567(b) except with a sit/stand option and limited dominant hand usage." A.R. at 23.

---

[2] In addition, the plaintiff has not challenged this aspect of the ALJ's decision in her appeal.

At step four, the ALJ determined that the plaintiff was unable to perform her past relevant work as an electrician because "[i]n her past relevant work . . . the claimant was required to lift and carry 50 pounds occasionally and 25 pounds frequently." *Id*. at 25. Accordingly, the ALJ proceeded to the fifth and final step.

At step five, the ALJ, relying on the testimony of the vocational expert, determined that there are jobs that exist "for an individual with the claimant's age, education, work experience and residual functional capacity," such as sales greeter, router, and office helper. *Id*. at 26. Therefore, the ALJ concluded that the plaintiff was not disabled.

### B. Plaintiff's Residual Functional Capacity

The plaintiff has challenged the ALJ's residual functional capacity assessment.

The RFC assessment is a "function-by-function inquiry based on all of the relevant evidence of a claimant's ability to do work and must contain a narrative discussion identifying the evidence that supports each conclusion." *Butler*, 353 F.3d at 1000 (internal quotation marks omitted). "In performing the RFC assessment, the ALJ must explain how he considered and resolved any material inconsistencies or ambiguities evident in the record, as well as the reasons for rejecting medical opinions in conflict with the ultimate RFC determination." *Id*. (internal quotation marks omitted). The ALJ must build a "logical bridge" from the evidence to his conclusion about the claimant's RFC. *Banks v. Astrue*, 537 F. Supp. 2d 75, 84 (D.D.C. 2008); *see also Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (remanding case where ALJ merely listed all the evidence without explaining which evidence led him to his conclusion or why he discounted contrary pieces of evidence).

In assessing the RFC, the ALJ must follow the framework set forth by the Administration in SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims* (the "SSA RFC

Ruling"). 1996 WL 374184 (S.S.A. July 2, 1996); *Ross*, 636 F. Supp. 2d at 132-33; *Butler*, 353 F.3d at 1000-03 (finding reversible error in ALJ's conclusions where the ALJ did not, *inter alia*, make the determinations required by the SSA RFC Ruling). Among other requirements, the SSA RFC Ruling directs the ALJ to consider the functions in paragraphs (b), (c), and (d) of 20 C.F.R. § 404.1545, which include physical abilities (such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions like reaching, handling, stooping or crouching), mental abilities (such as understanding, remembering, carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures), and other abilities affected by impairments. 20 C.F.R. § 404.1545; SSA RFC Ruling at, *1. In cases involving allegations of medical symptoms, the RFC assessment should contain "thorough discussion and analysis of the objective medical and other evidence." SSA RFC Ruling, at *7. In cases involving mental impairments, the ruling requires a "more detailed" assessment of the claimant's particular mental abilities than that required at step three, which is focused on broad categories designed to assess a mental impairment's severity. *Id.* at *4.

In this case, the ALJ concluded that "the claimant has the residual functional capacity to perform light unskilled work as defined in 20 C.F.R. § 404.1567(b) except with a sit/stand option and limited dominant hand usage." A.R. at 23. The ALJ failed, however, to provide a logical explanation for this conclusion and did not conduct the type of analysis required by the SSA RFC Ruling. *See id*. at 23-25. Instead, the ALJ's RFC assessment consists of extremely generic and abstract declarations. *See id.* The assessment does not contain analysis or citations of specific facts in the record that relate to claimant's functional abilities. Indeed, the assessment does not specifically mention any of the plaintiff's alleged symptoms, evaluating doctors, or

medical conditions. Nor does the decision distinguish in any way between the plaintiff's mental and physical impairments or capacities.

The RFC assessment in its current form impedes effective judicial review. *See Butler*, 353 F.3d at 1002. For example, the RFC assessment generically asserts that "[a]lthough the claimant has received treatment for the allegedly disabling impairment(s), that treatment has been essentially routine and/or conservative in nature." A.R. at 24. The ALJ does not provide any further details about the treatments or impairments being referenced in this conclusion. The ALJ notes that "[t]he doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." *Id.* at 25. Yet the ALJ inexplicably does not identify the particular doctor, symptoms, or limitations being referenced in that conclusion. As noted above, the ALJ's decision had previously cited medical reports from six different doctors. *Id*. at 21-22. Similarly, the ALJ states, "As for the opinion evidence, the doctor's opinion is without substantial support from the other evidence of record, which obviously renders it less persuasive." *Id.* at 25. Again, the ALJ does not identify the doctor, opinion, or condition being referenced. Such abstract conclusions that lack any indication of the evidence to which they pertain fail to provide the necessary "logical bridge," *Lane-Rauth,* 437 F. Supp. 2d at 67, and "thorough discussion and analysis," SSA RFC Ruling, at *7, that the RFC assessment must include.

The ALJ's conclusions about the plaintiff's testimony are also inscrutable. The ALJ stated that "[t]he description of the symptoms and limitations which the claimant has provided throughout the record has generally been inconsistent and unpersuasive." A.R. at 24. Yet the ALJ does not explain or identify the inconsistencies he observed. The Court notes that the

plaintiff's claims in the record actually appear to be relatively consistent, at least at a general level. For example, in a visit to Dr. Chester A. DiLallo on July 8, 2003, the plaintiff complained, *inter alia*, of injury to her neck, shoulders, and back as a result of her work accident. *Id*. at 316. In a medical report prepared by Dr. Chee-Hahn Hung on August 18, 2005, that doctor also noted the plaintiff's claims of pain in her shoulder, back, and neck. *Id.* at 225. "[T]he ALJ must explain how he considered and resolved any 'material inconsistencies or ambiguities' evident in the record . . . ." *Butler*, 353 F.3d at 1000 (quoting the SSA RFC Ruling at *7). The ALJ also justified his RFC conclusion by citing "the claimant's generally unpersuasive appearance and demeanor while testifying at the hearing," A.R. at 24, without providing any further elaboration. The D.C. Circuit has explained that an ALJ's credibility evaluation of a claimant's complaints of painful symptoms "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Butler*, 353 F.3d at 1005 (quoting SSR 96-7p, *Evaluation of Symptoms in Disability Claims: Assessing the Credibility of An Individual's Statements*, 1996 WL 374186, at *2 (SSA July 2, 1996)).

The plaintiff has asserted that the RFC assessment is "contradictory on its face" because it does not address the plaintiff's depression, which the ALJ had determined to be a "severe impairment." Pl.'s Mem. at 6-7. In fact, it is hard to tell which impairments – mental or physical – the RFC assessment addressed at all because it does not mention any symptoms or impairments in particular. In one paragraph, the ALJ addresses, in an abstract way, limitations on the claimant's "daily activities," concluding that these unspecified limitations are "considered to be outweighed by the other factors discussed in this decision." A.R. at 24. Perhaps this paragraph

11

is intended to relate to the plaintiff's depression since restrictions on activities of daily living are one factor to be considered in evaluating whether a claimant meets the listing for depression; the Court cannot be certain. If the discussion of "daily activities" is indeed intended to relate the plaintiff's mental RFC, it is hard to understand why the ALJ's assessment did not also address the plaintiff's deficiencies in "concentration, persistence or pace." *See* Pl.'s Mem. at 7. In considering whether the plaintiff met the listing for depression, the ALJ had specifically determined that the plaintiff had "moderate difficulties in concentration, persistence, or pace," but only "mild restriction" in activities of daily living. *See id.*; A.R. at 23. Thus, the plaintiff's confusion is well founded. Since it is unclear to what extent the RFC assessment addressed the plaintiff's mental impairments at all, the assessment also plainly fails to provide the "more detailed" analysis of the plaintiff's mental abilities required by the SSA RFC ruling. SSA RFC Ruling, at *4.

In short, the RFC assessment does not make clear the logical basis for the ALJ's conclusion that "the claimant has the residual functional capacity to perform light unskilled work as defined in 20 C.F.R. § 404.1567(b) except with a sit/stand option and limited dominant hand usage." A.R. at 23. *See Lane-Rauth,* 437 F. Supp. 2d at 67 (requiring a "logical bridge" to the ALJ's conclusions). In addition to providing an inadequate rationale for his conclusion, the wording of the ALJ's decision is also too generic to enable the Court to determine what evidence was credited and what evidence was rejected. *See id*. ("While the ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position.") (quoting *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000)). The D.C. Circuit's comments in *Butler v. Barnhart* apply here:

> The ALJ's reasoning is not simply 'spare' . . . it is missing. . . .The judiciary can scarcely perform its assigned review function, limited though it is, without some

> indication not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored.

*Butler,* 353 F.3d at 1002 (internal quotation marks, citations, and alterations omitted).

Unlike the ALJ's decision, the defendant's motion for judgment of affirmance does provide an analysis of the medical evidence relating to the plaintiff's conditions, with specific reference to particular doctors, treatments, symptoms, and conclusions about the plaintiff's functional capacities. *See generally* Def.'s Mem. The defendant argues that the facts in the record, as recited in the defendant's legal memorandum, indicate that there was "substantial evidence" supporting the ALJ's finding that the plaintiff was not disabled. *Id.* at 15-16. The function of this Court, however, "is to review the determinations actually made by the ALJ, not to engage in these determinations for him." *Ross*, 636 F. Supp. 2d at 133 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *see also Butler*, 353 F.3d at 1002 n.5. Further, the ALJ's decision must not only be supported by substantial evidence, it must also rest on a correct application of the law. *See Butler*, 353 F.3d at 999. Here, the law requires the Administration to comply with the process set forth in the SSA RFC Ruling. *Ross*, 636 F. Supp. 2d at 132; *see also* 42 U.S.C. § 405(g) (authorizing reviewing court to assess compliance with the relevant Administration regulations).

While the Court must defer to the ALJ's determination of facts supported by substantial evidence, the Court cannot understand the basis for the ALJ's conclusions based on the decision in its current form. *Lane-Rauth*, 437 F. Supp. 2d at 68. "While the court need not remand in search of a perfectly drafted opinion, where the ALJ's decision leaves the reviewing court with reservations as to whether an issue was fully addressed, the court should reverse." *Id.* (quoting *Samuel v. Barnhart*, 316 F. Supp. 2d 768, 774 (E.D. Wis. 2004)). The current form of the ALJ's decision precludes effective judicial review and does not indicate that the ALJ followed the

analytical framework set forth by the Administration in the SSA RFC Ruling. Accordingly, the Court must remand this case to the Administration.[3]

### C. The Vocational Expert's Testimony

The plaintiff also argues that, at step five, the ALJ improperly relied on the vocational expert's testimony to establish that the plaintiff could perform other work. The plaintiff contends the ALJ's hypothetical questions to the expert were deficient because they failed to include any reference to the plaintiff's mental limitations, such as her moderate difficulties in concentration, persistence, or pace. Pl.'s Mem. at 7. Since the Court has already determined that the ALJ improperly assessed the plaintiff's RFC, the ALJ's findings at step five necessarily must be reversed as well. *See Ray v. Astrue*, 718 F. Supp. 2d 65, 77 (D.D.C. 2010). Therefore, the Court need not consider whether the alleged deficiencies in the ALJ's hypothetical questions here would amount to an independent reversible error. Even so, to provide guidance on remand, the Court notes that the D.C. Circuit has instructed that "[d]eficiencies in the ALJ's description of the claimant's condition 'undermine the foundation for the expert's ultimate conclusion that there are alternative jobs' that the claimant is capable of performing." *Butler*, 353 F.3d at 1006 (quoting *Simms v. Sullivan,* 877 F.2d 1047, 1053 (D.C. Cir. 1989)). Accordingly, the Court advises that, on remand, the ALJ should include relevant limitations found to be supported by record evidence in any hypothetical questions posed to a vocational expert.

---

[3] The Court need not reach the plaintiff's more specific objections about the RFC assessment's consideration of particular record evidence since it is remanding this case based on the ALJ's failure to provide an adequate rationale for the RFC assessment. As explained above, the general rule is that "the ALJ must explain how he considered and resolved any material inconsistencies or ambiguities evident in the record, as well as the reasons for rejecting medical opinions in conflict with the ultimate RFC determination." *Butler*, 353 F.3d at 1000 (internal quotation marks omitted). "While the ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." *Lane-Rauth*, 437 F. Supp. 2d at 67.

## V. Conclusion

The Court grants the plaintiff's motion for a judgment of reversal, denies the defendant's motion for a judgment of affirmance, and remands this case to the Administration for further proceedings consistent with this memorandum opinion because the ALJ did not articulate an adequate basis for his conclusions regarding the plaintiff's residual functional capacity.

Date: March 17, 2011

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge